ESTATE OF MORY: ROBINSON, Appellant, v. WERNER, Administrator w.w.a., Defendant: PLANKINTON and another, Respondents.

*January 3—February 1, 1966.*

558

For the appellant there was a brief by *Thompson, Thompson & Grant* of Oshkosh, and oral argument by *Dean P. Grant.*

For the respondents there was a brief by *McCarty, Burns, Swetz, Curry & Wydeven* of Kaukauna, and oral argument by *Neil J. McCarty.*

BEILFUSS, J.   The issue confronting the court in this case is the effect of the lapse of a residuary clause in a will.

Appellant argues that when each residuary beneficiary died, there occurred a lapse of his share of the residue, resulting in an intestacy. However, when Emma Pettibone died survived by two children, the anti-lapse statute [1] prevented a lapse of her share. In effect, appellant argues that she is entitled to one half of the one-fourth residuary share of Emma Pettibone, under the anti-lapse statute, plus the three other one-fourth shares of the other residuary beneficiaries who predeceased testatrix without issue, under the laws of intestacy.

Respondents, on the other hand, argue that the shares of the deceased residuary beneficiaries do not lapse and pass by intestacy, but remain in the residue and pass by right of representation through the deceased residuary beneficiaries who were survived by issue. In effect, they argue that the entire residue must pass through Emma Pettibone to her issue. Thus, appellant is entitled to one half of the entire estate, and respondents are entitled to divide the other one half.

---

[1] "238.13 RIGHTS OF ISSUE OF DECEASED LEGATEE. When a devise or legacy shall be made to any child or other relation of the testator and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator unless a different disposition shall be made or directed by the will."

The trial court agreed with respondents, finding that the testatrix contemplated no lapse and no intestacy, and that the will evinced no intent to prefer Gwendolyn over Frank and his heirs. Thus, the court concluded that testatrix's intent was that lapsed shares of the residuary remain in the residuary and pass to surviving residuary legatees.

We cannot read such an intent from the four corners of the will and hold that the lapsed shares of the residuary pass by the laws of intestacy.

Respondents cite *Will of Schefe* (1952), 261 Wis. 113, 52 N. W. (2d) 375; *Will of Nielsen* (1950), 256 Wis. 521, 41 N. W. (2d) 369; *Will of Waterbury* (1916), 163 Wis. 510, 158 N. W. 340; and *Will of Reynolds* (1912), 151 Wis. 375, 138 N. W. 1019, in support of their position.

*Will of Reynolds, supra,* at page 379, stated the general rule that "[a] residuary bequest which fails or lapses for any cause, and is not otherwise disposed of by the will, becomes intestate estate and descends to the heir." However, the court looked at the language of the will and the facts and circumstances surrounding its execution to determine the testator's intent. In that case and the others cited above the court was able to find an intent and avoid invoking the intestacy rule.

Only in *Will of Ziehlke* (1939), 230 Wis. 574, 284 N. W. 497, did the court apply the general rule, but in that case no person existed who fit the description in the residuary clause, so the intestate distribution was compelled, and nieces and nephews who were specifically disinherited took by the laws of descent.

In *Will of Nielsen, supra,* the court invoked the presumption from *Estate of Hoermann* (1940), 234 Wis. 130, 290 N. W. 608, that a testator is presumed to intend a complete distribution of his estate, and courts should favor a construction which passes property through the will rather than by intestacy. This is especially true when the will contains a residuary clause.

The court then proceeded to place great weight on extrinsic facts and circumstances in evidence to conclude that the death of a residuary legatee did not result in a lapse and intestacy as to that share.

*Will of Rosnow* (1956), 273 Wis. 438, 78 N. W. (2d) 750, laid to rest the confusion found in the early lapsed-legacy cases in determining the intent of the testator. In that case the testator died survived by two sons, a daughter, and two grandchildren who were the children of a son who predeceased the testator. The testator's will specifically disinherited one son and one grandchild. The residue was given equally to the daughter and other son. The will further provided for distribution of the son's share should he predecease testator. However, it was the daughter who predeceased the testator without issue. If the deceased daughter's share passed by intestacy, then the disinherited son and disinherited grandchild would share in the testator's estate against his explicit command. We concluded that the lapsed share must pass by intestacy regardless of testator's obvious intent to the contrary.

In rejecting the approach in *Will of Nielsen, supra,* the court stated:

"The extrinsic considerations in *Will of Nielsen, supra,* seem now to be much less persuasive to the result then reached than they did when the case was determined. On the other hand, *Will of Ziehlke* (1939), 230 Wis. 574, 284 N. W. 497, which is not referred to in the *Nielsen* opinion presents the same problems as the case at bar and disposes of them according to what we consider must be the rule when, by lapse of a legacy a partial intestacy has occurred." (p. 441.)

"We find no escape from the logic of that opinion if we are to refrain, as we ought, from writing a new will for the testator. Therefore, we conclude that in the instant will the rules of descent take over when the testator made no provision for distribution of Meta's share of the residue in the event he outlived her." (p. 442.)

The commentators are in accord. "If a will gives a share of the residue to two or more persons, not as a class, and the gift to one of them lapses, the lapsed share goes as intestate property unless the will shows a contrary intent." 2 Callaghan, Wisconsin Probate Law (6th ed.), p. 367, sec. 15.140.

"It is now settled, by the weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum, but that it passes to testator's next of kin as intestate property." 6 Page, Wills (Bowe-Parker rev.), p. 97, sec. 50.18.

This being the established rule in Wisconsin, we look to the will itself to determine the intent of the testatrix. None appears. The entire will consists of only two dispositive clauses and the residuary, apart from the familiar formal requisites. Clause Second bequeathed jewelry to appellant. Clause Third bequeathed a watch to Frank Pettibone, father of respondents and brother of appellant. Clause Fourth gives the residue to the four brothers and sisters "to be divided into equal shares."

There is nothing in the will to indicate an intent should the residuary gifts lapse. The fact that testatrix did not provide in her will for two brothers is certainly not significant under the rationale of the *Ziehlke* and *Rosnow Cases*. Therefore we hold that the gifts lapsed as to Minnie Peck, Rose Benoit, and William J. Mory, and pass as intestate property. The language used does not create a class gift or joint tenancy, and the presumption against intestacy is of no effect when the testatrix has provided no indication, by the language used, of her intent in this situation. What she would have provided had she anticipated that all the residuary beneficiaries would predecease her is a matter for conjecture and speculation. For us to presume her intent would amount to judicial will drafting, which we refuse to do.

The fourth share of the residue, that of Emma Pettibone, did not lapse, but was saved by the provisions of

sec. 238.13, Stats., and passes to the issue of Emma Pettibone according to the provisions stated therein.

It remains only for us to consider the merits of the rule announced in *Rosnow* and reiterated here. Respondents have attacked the rule applied in Wisconsin, although they concede that rule is the majority rule in this country, as one which is arbitrary and defeats the intent of the testator more often than it gives effect to that intent. On the other hand, the rule contended for by respondents could have the effect of having the entire estate go to a legatee to whom only a minute portion of the estate was originally bequeathed merely because of the fortuitous circumstance that other legatees predeceased the testator. In the absence of language creating a class gift or joint tenancy it is unreasonable to assume that the testator intended such a result.

It seems clear that when any residuary bequest lapses the ancient rules of intestacy as provided for by statute must apply. Such application causes the intestate property to pass to the testator's next of kin, who is presumed to be the testator's natural bounty. If the testator intends a different result, he is compelled to communicate that intent by language in the will.

*By the Court.*—Judgment reversed, and cause remanded with direction to determine distribution of the intestate property under the laws of descent.